## METCALF & EDDY v. MITCHELL, ADMINISTRATRIX.

## MITCHELL, ADMINISTRATRIX, v. METCALF & EDDY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 183 and 376. Submitted November 30, 1925.—Decided January 11, 1926.

1. Upon a writ of error to the District Court based on a constitutional question, the jurisdiction of this Court is not limited to that question but extends to the whole case. P. 518.
2. A consulting engineer engaged as such by a State or local subdivision for work not permanent or continuous in character on public water supply and sewage disposal projects, whose duties are prescribed by his contract, and who takes no oath of office and is free to accept other, concurrent employment, is neither an officer nor an employee within the meaning of § 201 (a) of the War Revenue Act of 1917, exempting from income tax the compensation or fees of officers and employees under any State or local subdivision thereof. P. 519.
3. The constitutional limitation forbidding the federal Government and the State to tax each other's agencies must receive a practical

construction permitting each government to function. with the minimum of interference from the other. P. 523.

4. One who is not an officer or employee of a State does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the State, when it does not appear that the tax impairs in any substantial manner his ability to discharge his obligations to the State or the ability of the State or its subdivisions to procure the services of private individuals to aid them in their undertakings. P. 524.

299 Fed. 812, affirmed.

ERROR to review a judgment of the District Court in a suit brought against a former Collector to recover money paid under protest as income tax. The judgment allowed some of the items claimed and rejected others. Both sides sued out writs of error. That of the Collector (No. 376) was not pressed at the argument in this Court and was dismissed.

*Messrs. Philip Nichols* and *Joseph A. Boyer* were on the brief, for plaintiffs in error in No. 183 and defendants in error in No. 376.

The State immunity extends to all appropriate instrumentalities which the States may select, without distinction between permanent and regular officers and employees on the one hand and other human instrumentalities on the other. It is not limited to such instrumentalities as may be arbitrarily selected by Congress. *United States v. Baltimore &c. R. R.,* 17 Wall. 322; *Freedman v. Sigel,* 10 Blatchf. 327; *Bettman v. Warwick,* 108 Fed. 46. It rests upon the same foundation and is quite as broad and important as the reciprocal limitation in favor of the United States. *Texas v. White,* 7 Wall. 700; *Hammer v. Dagenhart,* 247 U. S. 251. The exemption exists regardless of statute. *Biscoe v. Tax Commissioner,* 236 Mass. 201.

Beginning with *McCulloch v. Maryland,* 4 Wheat, 316, it has been consistently held that a State could not tax

the instrumentalities of the United States, whatever their character. *Allen* v. *The Assessors*, 3 Wall. 573; *Farmers' &c. Bank* v. *Minnesota*, 232 U. S. 516; *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180; *Federal Land Bank* v. *Crosland*, 261 U. S. 374. A tax on persons passing through a State cannot be imposed on officers of the United States in the performance of their duties, *Crandall* v. *Nevada*, 6 Wall. 40; and a tax on persons engaged in sending telegraph messages which makes no exemption in favor of official messages of the United States is unconstitutional. *Williams* v. *Talladega*, 226 U. S. 404. A State cannot tax the franchise of a transcontinental railroad company chartered by Congress, *California* v. *Central Pacific R. R.*, 127 U. S. 1; nor lands in possession of an Indian tribe, *New York Indians*, 5 Wall. 761; *Choate* v. *Trapp*, 224 U. S. 665; nor the income derived from such lands by a lessee, *Gillespie* v. *Oklahoma*, 257 U. S. 501. Both the United States and the States are free to select such instrumentalities as they see fit. *McCulloch* v. *Maryland*, 4 Wheat. 316; *South Carolina* v. *United States*, 199 U. S. 437; *Osborn* v. *United States Bank*, 9 Wheat. 738.

In addition to officers and employees, independent contractors have been definitely recognized as such appropriate instrumentalities. *Osborn* v. *United States Bank, supra; Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Choctaw & Gulf R. R.* v. *Harrison*, 235 U. S. 292; *Indian &c. Oil Co.* v. *Oklahoma*, 240 U. S. 522; *Gillespie* v. *Oklahoma*, 257 U. S. 501; *Western Union Tel. Co.* v. *Texas*, 105 U. S. 460; *Williams* v. *Talladega*, 226 U. S. 404.

It is thus clear that, whether the plaintiffs were officers, employees, or independent contractors, they were in any event not disqualified from acting as instrumentalities of government by reason of the methods adopted by the various States and municipalities in acquiring

their services, whether by election, appointment, or contract. The essential fact here is that their services were acquired by a method and in a capacity satisfactory to the sovereignty which acquired them. The cases which limit the power of the States to tax federal instrumentalities draw no distinction between income from personal services on the one hand and income from property or from the use of capital on the other. The present case does not, however, require a decision that income from any source other than from personal services to a State or political subdivision is exempt from federal taxation. A tax on compensation for personal service is in substance and effect a tax on gross receipts. It may be that here the distinction lies. *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321. There is no sound basis for any distinction between income from personal services resulting from an official appointment and income from personal services resulting from a contractual employment, and still less basis for a distinction between " regular and permanent " officers and employees, and those whose services are acquired, whether by appointment or by contract, to perform a specific task. The compensation of such instrumentalities is inseparably connected with the instrumentalities.

The plaintiffs may be held to be free from taxation on the items of income involved here without a decision that the statute is unconstitutional. Upon a not unreasonable construction the plaintiffs were " employees " of States and political subdivisions of States. Even if the plaintiffs were not " officers " or " employees," but were other appropriate instrumentalities used in the exercise of strictly governmental functions, the statute may be treated as inapplicable to them.

The income of the plaintiffs does not cease to be exempt because the United States has seen fit to tax it to them jointly.

*Solicitor General Mitchell, Assistant Attorney General Letts* and *Mr. Robert P. Reeder,* Special Assistant to the Attorney General, were on the brief, for Mitchell, former Collector.

*Mr. Lewis M. Isaacs,* submitted a brief as *amicus curiae,* by special leave of Court.

MR. JUSTICE STONE delivered the opinion of the Court.

Metcalf & Eddy, the plaintiffs below, were consulting engineers who, either individually or as co-partners, were professionally employed to advise states or subdivisions of states with reference to proposed water supply and sewage disposal systems. During 1917 the fees received by them for these services were paid over to the firm and became a part of its gross income. Upon this portion of their net income they paid, under protest, the tax assessed on the net income of co-partnerships under the War Revenue Act of 1917 (Act of October 3, 1917, c. 63, § 209, 40 Stat. 300, 307). They then brought suit in the United States District Court for Massachusetts to recover the tax paid on the items in question, on the ground that they were expressly exempted from the tax by the Act itself, and on the further ground that Congress had no power under the Constitution to tax the income in question.

The District Court found that two of the items were within the statutory exemption; that the remaining eighteen were not exempt from taxation, either by the provisions of the statute or under the Constitution, and entered judgment accordingly. 299 Fed. 812.

The former Collector sued out the writ of error in No. 376 as to the two items on which a recovery was allowed. In No. 183 the writ of error is prosecuted by the plaintiffs below as to the remaining items. Jud. Code, § 238, before amendment of 1925.

As the case comes directly from the District Court to this Court on a constitutional question, the jurisdiction

of this Court is not limited to that question alone, but extends to the whole case. *Horner* v. *United States, No. 2,* 143 U. S. 570; *Greene* v. *Louisville, etc., R. R. Co.,* 244 U. S. 499.

All of the items of income were received by the taxpayers as compensation for their services as consulting engineers under contracts with states or municipalities, or water or sewage districts created by state statute. In each case the service was rendered in connection with a particular project for water supply or sewage disposal, and the compensation was paid in some instances on an annual basis, in others on a monthly or daily basis, and in still others on the basis of a gross sum for the whole service.

The War Revenue Act provided for the assessment of a tax on net income; but § 201(a) (40 Stat. at 303) contains a provision for exemption from the tax as follows:

"This title shall apply to all trades or businesses of whatever description, whether continuously carried on or not, except—

"(a) In the case of officers and employees under the United States, or any State, Territory, or the District of Columbia, or any local subdivision thereof, the compensation or fees received by them as such officers or employees . . ."

The court found that the two items of income involved in No. 376 were received by one of the plaintiffs in error as compensation for his services as the incumbent of an office created by statute; in one case as chief engineer of the Kennebec Water District, a political subdivision of the State of Maine, and in the other as a member of the Board of Engineers of the North Shore Sanitary District a political subdivision of the State of Illinois. The Col lector does not press his writ of error in this case, and we therefore dismiss the writ.

We think it clear that neither of the plaintiffs in error occupied any official position in any of the undertakings

to which their writ of error in No. 183 relates. They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration and some from year to year, others for the duration of the particular work undertaken. Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute. We therefore conclude that plaintiffs in error have failed to sustain the burden cast upon them of establishing that they were officers of a state or a subdivision of a state within the exception of § 201(a).

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. *United States* v. *Hartwell,* 6 Wall. 385; *Hall* v. *Wisconsin,* 103 U. S. 5. The term "officer" is one inseparably connected with an office; but there was no office of sewage or water supply expert or sanitary engineer, to which either of the plaintiffs was appointed. The contracts with them, although entered into by authority of law and prescribing their duties, could not operate to create an office or give to plaintiffs the status of officers. *Hall* v. *Wisconsin, supra; Auffmordt* v. *Hedden,* 137 U. S. 310. There were lacking in each instance the essential elements of a public station, permanent in character, created by law, whose incidents and duties were prescribed by law. See *United States* v. *Maurice,* 2 Brock. 96, 102, 103; *United States* v. *Germaine,* 99 U. S. 508, 511, 512; *Adams* v. *Murphy,* 165 Fed. 304.

Nor do the facts stated in the bill of exceptions establish that the plaintiffs were "employees" within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does

not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea of that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. *Chicago, Rock Island & Pacific Ry. Co.* v. *Bond,* 240 U. S. 449, 456; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 227; and see *Casement* v. *Brown,* 148 U. S. 615; *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 518, 523.

We pass to the more difficult question whether Congress had the constitutional power to impose the tax in question, and this must be answered by ascertaining whether its effect is such as to bring it within the purview of those decisions holding that the very nature of our constitutional system of dual sovereign governments is such as impliedly to prohibit the federal government from taxing the instrumentalities of a state government, and in a similar manner to limit the power of the states to tax the instrumentalities of the federal government. See, as to federal taxation on state instrumentalities, *Collector* v. *Day,* 11 Wall. 113; *United States* v. *Railroad Co.,* 17 Wall. 322; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 585, 586; *Ambrosini* v. *United States,* 187 U. S. 1; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; see cases holding that the Sixteenth Amendment did not extend the taxing power to any new class of subjects, *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; *Peck & Co.* v. *Lowe,* 247 U. S. 165, 172; *Eisner* v. *Macomber,* 252 U. S. 189; *Evans* v. *Gore,* 253 U. S. 245, 259. And, as to state taxation on federal instrumentalities, see *McCulloch* v. *Mary-*

*land,* 4 Wheat. 316; *Dobbins* v. *Commissioners of Erie County,* 16 Pet. 435; *The Banks* v. *The Mayor,* 7. Wall. 16; *Weston* v. *The City Council of Charleston,* 2 Pet. 449, 467; *Farmers Bank* v. *Minnesota,* 232 U. S. 516; *Choctaw & Gulf R. R.* v. *Harrison,* 235 U. S. 292; *Indian Oil Co.* v. *Oklahoma,* 240 U. S. 522; *Gillespie* v. *Oklahoma,* 257 U. S. 501.

Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this Court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. Thus the employment of officers who are agents to administer its laws (*Collector* v. *Day; Dobbins* v. *Commissioners of Erie County, supra*), its obligations sold to raise public funds (*Weston* v. *The City Council of Charleston, supra; Pollock* v. *Farmers' Loan & Trust Co., supra*), its investments of public funds in the securities of private corporations, for public purposes (*United States* v. *Railroad Co., supra*), surety bonds exacted by it in the exercise of its police power (*Ambrosini* v. *United States, supra*), are all so intimately connected with the necessary functions of government, as to fall within the established exemption; and when the instrumentality is of that character, the immunity extends not only to the instrumentality itself but to income derived from it (*Pollock* v. *Farmers' Loan & Trust Co.; Gillespie* v. *Oklahoma, supra,*) and forbids an occupation tax imposed on its use. *Choctaw & Gulf R. R. Co.* v. *Harrison, supra;* and see *Dobbins* v. *Commissioners of Erie County, supra.*

When, however, the question is approached from the other end of the scale, it is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his

property is an instrumentality of government within the meaning of the rule.  *Thomson* v. *Pacific Railroad,* 9 Wall. 579; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, 371; *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319; *Choctaw, O. & G. R. R. Co.* v. *Mackay,* 256 U. S. 531.

As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune.  Experience has shown that there is no formula by which that line may be plotted with precision in advance.  But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation.  Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other.  *McCulloch* v. *Maryland, supra.; Collector* v. *Day; Dobbins* v. *Commissioners of Erie County, supra.*

In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other.  The burden of federal taxation necessarily sets an economic limit to the practical operation of the taxing power of the states, and *vice versa.*  Taxation by either the state or the federal government affects in some measure the cost of operation of the other.

But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers.  Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practi-

cal construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (*South Carolina* v. *United States,* 199 U. S. 437, 461; *Flint* v. *Stone Tracy Co., supra,* at 172,) or the appropriate exercise of the functions of the government affected by it. *Railroad Co.* v. *Peniston, supra,* 31.

While it is evident that in one aspect the extent of the exemption must finally depend upon the effect of the tax upon the functions of the government alleged to be affected by it, still the nature of the governmental agencies or the mode of their constitution may not be disregarded in passing on the question of tax exemption; for it is obvious that an agency may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power.

It is on this principle that, as we have seen, any taxation by one government of the salary of an officer of the other, or the public securities of the other, or an agency created and controlled by the other, exclusively to enable it to perform a governmental function, (*Gillespie* v. *Oklahoma, supra,*) is prohibited. But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed

to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way. *Railroad Co.* v. *Peniston;* *Gromer* v. *Standard Dredging Co.;* *Baltimore Shipbuilding Co.* v. *Baltimore; Fidelity &* *Deposit Co.* v. *Pennsylvania; Choctaw, O. & G. R. R. Co.* v. *Mackey, supra.*

As was said by this Court in *Baltimore Shipbuilding Co.* v. *Baltimore, supra,* in holding that a state might tax the interest of a corporation in a dry dock which the United States had the right to use under a contract entered into with the corporation:

"It seems to us extravagant to say that an independent private corporation for gain created by a State, is exempt from state taxation either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time." (p. 382.)

And as was said in *Fidelity & Deposit Co.* v. *Pennsylvania, supra,* in holding valid a state tax on premiums collected by bonding insurance companies on surety bonds required of United States officials:

" But mere contracts between private corporations and the United States do not necessarily render the former essential government agencies and confer freedom from state control." (p. 323.)

These statements we deem to be equally applicable to private citizens engaged in the general practice of a profession or the conduct of a business in the course of which they enter into contracts with government from which they derive a profit. We do not suggest that there may not be interferences with such a contract relationship by means other than taxation which are prohibited. *Railroad Co.* v. *Peniston, supra,* at p. 36, recognizes that there may. Nor are we to be understood as laying down any rule that taxation might not affect agencies of this character in such a manner as directly to interfere with the

functions of government and thus be held to be void. See *Railroad* v. *Peniston, supra,* page 36; *Farmers Bank* v. *Minnesota, supra,* p. 522; *Choctaw & Gulf Railway Co.* v. *Harrison, supra,* p. 272.

But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of the particular tax, on the functioning of the state government, we do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings. Cf. *Central Pacific Railroad* v. *California,* 162 U. S. 91, 126. We therefore conclude that the tax in No. 183 was properly assessed.

*No. 183, judgment affirmed.*
*No. 376, writ of error dismissed.*